DAMOORGIAN, J.
 

 The School District of Martin County (the School District) timely appeals an order rendered by the Public Employees Relations Commission (the Commission). We reverse, holding that the Commission’s decision that changes in the manner of distribution of the Florida Teacher Lead Program (FTLP) funds affects the teachers’ terns and conditions of employment was not a reasonable construction of section 447.501(a) and (c), Florida Statutes (2007). Because of our holding, we need not address the School District’s other arguments.
 

 On October 3, 2007, the Martin County Education Association (the Teachers) filed an unfair labor practice charge alleging that the School District violated section 447.501(a) and (c), Florida Statutes (2007), by failing to bargain its decision to distribute FTLP funds to teachers through Visa debit cards, in lieu of distribution through traditional check. This case arises from that charge.
 

 The purpose and manner of distribution for the FTLP funds is principally governed by section 1012.71, Florida Statutes. Pursuant to both the current statute, as well as the version in effect prior to recent amendments, each year the Legislature appropriates FTLP funds “for classroom teachers to purchase, on behalf of the school district or charter school, classroom materials and supplies for the public students assigned to them and may not be used to purchase equipment.” Each school district receives a proportionate share of the amount appropriated based on total unweighted full-time equivalent (“FTE”) student enrollment. The district school board must then calculate an identical amount for each of its classroom teachers which must be distributed to the teachers by no later than September 30th of the year. The teachers are required to keep
 
 *44
 
 receipts of the money they expended and return any unused money to their schools.
 

 Beginning with the 2001-2002 school year, the School District distributed the FTLP funds to each teacher by issuing a check for the pertinent amount. The check identified the School District as the payor and each year the amount of the stipend could change. The teachers could cash the stipend check or deposit it in their personal bank account and then purchase supplies. It was a common practice for teachers to purchase some supplies prior to receiving the stipend check when the stores had good sales and so that they could be prepared for the start of the school year.
 

 However, for the 2007-2008 school year, the School District changed the manner in which it distributed the funds and distributed them via pre-paid debit cards to the teachers in September, 2007. Because the debit cards could not be converted to cash, employees could not use them to reimburse themselves for purchases made prior to the start of the school year. To make online purchases, an employee must register with Bank of America, providing their name, address, telephone number, driver’s license number, and social security number.
 

 The Teachers, thereafter, filed the underlying charge as a result of this change in the method of payment. On December 5, 2007, a telephonic public hearing was held. All parties were afforded the opportunity to appear, present evidence, cross-examine witnesses, and participate fully in the hearing. The hearing officer issued his recommended order on January 30, 2008, finding that the change in method of distributing FTLP funds affected the Teachers’ terms and conditions of employment.
 

 Both parties filed exceptions with the Commission. After considering the exceptions, the Commission entered its final order dated April 29, 2008, in which it held, “we agree with the hearing officer’s conclusion, albeit for different reasons, that the School District’s conduct in unilaterally changing the method by which it distributed the stipend was unlawful.”
 

 The School District timely filed its notice of appeal. Subsequent to the filing of the notice of appeal in this case, the controlling statute, section 1012.71, Florida Statutes, was amended by chapter 2008-235, section. 28, Laws of Florida. The Session Law amended section 1012.71(3), Florida Statutes (2008), to read, in part, as follows:
 

 The district school board and each charter school board shall provide each classroom teacher with his or her total proportionate share [of FTLP funds] by September 30 of each year
 
 by any means determined appropriate by the district school board
 
 or charter school board,
 
 including,
 
 but not limited to, direct deposit, check,
 
 debit card,
 
 or purchasing card, notwithstanding any law to the contrary
 

 [FTLP] Funds
 
 received by a classroom teacher
 
 do not affect loages, hours, or terms and conditions of employment
 
 and, therefore,
 
 are not subject to collective bargaining.
 

 (emphasis added). The legislature made the amendment retroactive to July 1, 2007.
 

 The applicable standard of review of orders issued by an administrative agency was set forth in
 
 Big Bend Hospice, Inc. v. Agency for Health Care Admin.,
 
 904 So.2d 610, 611 (Fla. 1st DCA 2005).
 

 [A] review of an order of an administrative agency begins “with the usual recognition of deference to an agency’s interpretation of a statute it is charged to administer.” However, a reviewing
 
 *45
 
 court can overturn the agency’s interpretation of a statute if the interpretation is clearly erroneous. In addition to this rule of deference, our review is governed by section 120.68, Florida Statutes (2001), which provides that a reviewing court may set aside agency action when it finds that the action is dependent on any finding of fact that is not supported by substantial competent evidence in the record, on a material error in procedure, on an incorrect interpretation of law, or otherwise constitutes an abuse of discretion.
 

 Thus, the central issue in this case is whether the Commission’s decision that the School District was required to collectively bargain the decision to switch the method of distributing FTLP funds from checks to debit cards was clearly erroneous. To answer this question, we must first determine whether the method of distributing debit cards is a mandatory subject of bargaining.
 

 The Florida Constitution, article 1, section 6, provides that employees have the right, “by and through a labor organization, to
 
 bargain collectively
 
 ” and that such right “shall not be denied or abridged.” Although there is no precise definition of what
 
 must
 
 be submitted to collective bargaining, section 447.309(1), Florida Statutes (2007), provides that “the bargaining agent for the organization and the chief executive officer of the appropriate public employer or employers, jointly, shall
 
 bargain collectively
 
 in the determination of the
 
 tuages, hours, and, terms and conditions of employment
 
 of the public employees within the bargaining unit.” (emphasis added). Several cases have interpreted chapter 447 to require a public employer to bargain those cases “affecting, or impacting upon, employment or a condition of employment.”
 
 Fraternal Order of Police, Miami Lodge 20 v. City of Miami,
 
 609 So.2d 31, 33 (Fla.1992) (citing
 
 Bd. of County Comm’rs v. Cent. Fla. Firefighters Ass’n,
 
 467 So.2d 1023, 1026 (Fla. 5th DCA 1985)). If a case does not fall within that statutory definition or is a permissive subject because it is a managerial prerogative, then a public employer may act unilaterally. I
 
 d.
 

 The School District argues that the change to the method of distributing the FTLP funds was a managerial prerogative that need not be submitted to collective bargaining. The Teachers respond that the Commission’s decision that the change affected the terms and conditions of their employment was a reasonable interpretation of the statute and thus, not clearly erroneous.
 

 The Commission’s construction of the statute in this case was clearly erroneous because the 2008 statutory amendments unequivocally expressed that the method of distribution does not affect a term or condition of employment. While the Florida Constitution provides that an employer may not abridge an employee’s right to collectively bargain, it has left it up to the legislature to define what subjects are matters of collective bargaining. In exercising this right, the legislature defined mandatory subjects of collective bargaining as those that affect a term or condition of employment. § 1012.71, Fla. Stat. (2007). With the 2008 statutory amendments, the legislature further expressed that the method of distributing FTLP funds did not affect a term or condition of employment and thus, was not a mandatory subject of collective bargaining. § 1012.71(3), Fla. Stat. (2008). This clear expression of legislative intent demonstrates that the Commission’s decision to the contrary is clearly erroneous.
 
 See D & T Props., Inc. v. Marina Grande Assocs., Ltd.,
 
 985 So.2d 43, 47 (Fla. 4th DCA 2008) (citing
 
 Finley v. Scott,
 
 707 So.2d
 
 *46
 
 1112, 1116 (Fla.1998)) (“Where the legislature expressly characterizes the intent of legislation, it is especially appropriate to consider the amended statute to detennine the original legislative intent of the statute.”);
 
 see also Lowry v. Parole & Probation Comm’n,
 
 473 So.2d 1248, 1250 (Fla.1985) (stating that where “an amendment to a statute is enacted
 
 soon
 
 after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law”). After all, the legislature, as the body that created the statute, was in the best position to interpret what it meant by that statute. Accordingly, we reverse and vacate the Commission’s decision.
 

 Reversed.
 

 WARNER and STEVENSON, JJ., concur.