BENTON, C.J.,
dissenting.
Under governing statutes and rules, the Commission’s role is to investigate public *1065 sector whistleblowers’ complaints and to advocate for public employee whistleblow-ers who have been subjected to retaliation. In the present case, the Commission failed to fulfill its roles as investigator and advocate, and acted instead as judge, jury and executioner. The express “intent of the Legislature [is] to prevent agencies ... from taking retaliatory action against any person who discloses information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public official, or employee.” § 112.3187(2), Fla. Stat. (2011). Because the court today puts its imprimatur on the Commission’s arbitrary halt to the process the Legislature put in place to accomplish its intent, I respectfully dissent.
The Legislature has authorized whistle-blowers to sue in circuit court or to seek administrative relief in proceedings at the Public Employer Relations Commission (PERC), and has not given the Florida Commission on Human Relations (Commission or FCHR) the power to stop them from doing so:
The Whistle-blower’s Act provides a statutory cause of action for employees of state agencies, among others, who face adverse personnel action as a result of certain protected activities. §§ 112.3187(8)(a); 112.31895(4)(a). Employees of state agencies may seek the relief provided under the Act through either circuit court or the Public Employees Relations Commission (PERC). §§ 112.3187(8)(a); 112.31895(4)(a). However, the Act provides certain prerequisites to the filing of an action in either circuit court or with PERC. §§ 112.3187; 112.31895.
Robinson v. Dep’t of Health, 89 So.3d 1079, 1081 (Fla. 1st DCA 2012), review denied, No. SC12-1447, 2012 WL 6757547 (Fla. Dec. 28, 2012). Before a public employee may seek relief in either forum, the Legislature has directed that the FCHR investigate the matter and take appropriate action, including attempting to “conciliate a complaint.” § 112.31895(3)(d), Fla. Stat. (2011). The complainant may then elect to pursue judicial remedies or file for relief with PERC.
The Commission’s investigation is meant to be but the first step in the process. Only if the complaint is filed out of time or falls outside the Commission’s investigatory jurisdiction[3] is dismissal by the Commission appropriate. Otherwise, the Legislature has provided that the Commission shall conduct an investigation. “Upon termination of any investigation, the Florida Commission on Human Relations shall notify the complainant and the agency head of the termination of the investigation, providing a summary of relevant facts found during the investigation and the reasons for terminating the investigation.” § 112.31895(3)(d), Fla. Stat. (2011).
Our supreme court has been very clear that the public Whistle-blower’s Act should be construed broadly so “protections of the Whistle-Blower’s Act” are given full effect:
For example, the Act provides that an employee may bring an action when the whistle-blowing concerns “[a]ny ... suspected violation of any ... law, rule, or regulation committed by an employee or *1066 agent of an agency,” or with respect to “[a]ny ... suspected act of ... misfeasance ... or gross neglect of duty committed by an employee or agent of an agency.” § 112.8187(5), Fla. Stat. (1993). If the plain meaning of this section leaves any doubt as to the inclusiveness of this right of action and the broad protections afforded, the Legislature also provided that it is “the intent of the Legislature to prevent agencies ... from taking retaliatory action against any person who discloses information to an appropriate agency alleging improper use of governmental office ... or any other abuse ... on the part of an agency, public officer, or employee.” § 112.3187(2), Fla. Stat. (1993). The statute could not have been more broadly worded.
Irven v. Dep’t of Health & Rehab. Servs., 790 So.2d 403, 406 (Fla.2001) (emphasis supplied). Today’s decision construes the Act narrowly, and significantly diminishes its protections.
In the present case, Clare Caldwell filed with the FCHR a form Whistle-Blower Retaliation Charge of Discrimination in which she alleged that she was fired as an employee of the Florida Department of Elder Affairs (FDEA) for, among other things, cooperating with a federal investigation looking into (and ultimately critical of) FDEA by informing the federal investigator of gross misfeasance and malfeasance in the FDEA’s ombudsman program.[4] In a letter somebody named Wilson signed for an FCHR co-executive director, the Commission announced it “lack[ed] jurisdiction to investigate” on grounds Ms. Caldwell “did not engage in a protected activity as defined by the Act.”[5] Unable to pursue relief ei *1067 ther in circuit court or at PERC under our recent precedent, see Robinson, 89 So.3d at 1081 (requiring exhaustion of administrative remedies, including judicial review[6]), Ms. Caldwell brought the present appeal.
In her initial brief, Ms. Caldwell paints a picture of wholesale dereliction in alleging that FCHR mishandled her complaint, arguing, among other things:
FCHR failed to properly notify the other party of receipt of the charge within three working days as required under § 112.31895(l)(b). FCHR failed to conduct the fact finding investigation required under § 112.31895(2). FCHR failed to attempt to conciliate within 60 days as required under § 112.31895(3)(d). FCHR faded to notify Caldwell of her option to file a civil suit or an administrative appeal as required under § 112.3187(8). Instead, it improperly and illegally dismissed her complaint less than two months after it was filed....
[[Image here]]
Public supervisory officials misapplying the law and interfering with the State Ombudsman is illegal and would also constitute “gross mismanagement” and/or “gross neglect of duty” under § 112.3187(5)(b), Florida Statutes. In a broader sense, what Caldwell complained about was the illegal interference with the State Ombudsman in the performance of his job duties which was a violation of both state and federal law.
Caldwell never got the chance to amend her claim if it was deficient. She never got the chance to offer proof of her claims. She never got the chance to show that the actions of which she complained were illegal. This is in contrast to the holding[s in cited cases].
Initial Brief, 6, 15 (footnote omitted). She argues that FCHR’s dismissal should be reversed, with directions to issue a notice of termination of investigation instead.
The public sector Whistle-blower Act is remedial in nature, a “ ‘remedial statute designed to encourage the elimination of public corruption by protecting public employees who “blow the whistle.” As a remedial act, the statute should be construed liberally in favor of granting access to the remedy.’ ” Irven, 790 So.2d at 405 (quoting Martin Cnty. v. Edenfield, 609 So.2d 27, 29 (Fla.1992)). FCHR’s cryptic *1068 letter is an unauthorized impediment to Ms. Caldwell’s pursuing her Whistle-blower claims, whether in circuit court or at PERC, at her election. In either of these forums, of course, she may plead (and the presiding officer may require her to plead) with more specificity. See, e.g., Bohannon v. Shands Teaching Hosp. & Clinics, Inc., 983 So.2d 717, 721 (Fla. 1st DCA 2008) (affirming judgment dismissing amended complaint in circuit court at the instance of Florida Department of Elder Affairs). But she should not be prevented from filing in circuit court or at PERC.
The present case can be distinguished from Tillery v. Fla. Dep’t of Juvenile Justice, 104 So.3d 1253, 1255 (Fla. 1st DCA 2013), where the complaint failed “to allege when or to whom [Tillery] made [alleged] whistle-blower disclosures,” claimed as the bases for retaliation. Because “his complaint d[id] not meet the prima facie elements necessary to initiate operation of the Act,” the court ruled[7] “the Commis *1069 sion, which can only investigate claims covered by the Act, had no statutory authority to proceed.” Id. Perhaps less readily the present case can also be distinguished from Stanton v. Fla. Dep’t of Health, — So.3d -, -, 2013 WL 466280, 38 Fla. L. Weekly D325, D325 (Fla. 1st DCA Feb. 8, 2013), where the court affirmed FCHR’s dismissal of a whistleblower’s complaint[8] because it contained “only conclusory allegations of retaliation.” Id.
In the present case, Ms. Caldwell alleged she informed a federal investigator “[o]n approximately April 15, 2011,” after the Federal Administration on Aging initiated an investigation of her employer FDEA, of “the condition of the [FDEA] Ombudsman program and the gross misfeasance and malfeasance that were occurring within,” and was terminated as “a direct result.” The majority opinion complains that “gross misfeasance and malfeasance” could have been identified with more specificity. But there is absolutely no reason on this record to conclude that the gross misfeasance and malfeasance that Ms. Caldwell alleged lie outside *1070 FCHR’s investigatory jurisdiction.[9] Interfering with the duties of the State Ombudsman is, moreover, a violation of criminal law. § 400.0083, Fla. Stat. (2011).
FCHR’s summary denial of Ms. Caldwell’s rights to pursue her whistleblower claim took place despite the fact she had no opportunity to amend her complaint, even though Rule 60Y-5.001, Florida Administrative Code, provides:
(7) Amendments.
(a) A complaint may be reasonably and fairly amended within 60 days after filing and, thereafter, for good cause with the consent of the Executive Director.
(b) A complaint may be amended to cure technical defects, or omissions, including verification, or to clarify and amplify allegations made therein. Such amendments and amendments which describe an additional unlawful employment practice related to or growing out of the subject matter of the original complaint will relate back to the date the complaint was first received.
Fla. Admin. Code R. 60Y-5.001(7)(a)-(b). FCHR’s summary denial violated its own rules and the governing statute, and arbitrarily brought to an end Ms. Caldwell’s efforts to obtain redress for the discharge she alleged was in retaliation for her cooperation with an official investigation into a state agency’s gross misfeasance and malfeasance.
The majority opinion fails to address the fact that Ms. Caldwell was denied any opportunity to amend her complaint partly on grounds “it was not raised until the reply brief.” Ante p. 1064 n. 2. The record in the present case belies this assertion. In her initial brief[10] she argued, “Caldwell *1071 never got the chance to amend her claim if it has defects.” More importantly, the majority opinion turns a blind eye to appellant’s larger point altogether. Under the statutory scheme, a public employee is entitled to litigate a claim that she was fired because she made protected disclosures. If the public employee elects circuit court, whether her disclosures were protected may be a question of fact for the jury. See Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1133 (Fla. 4th DCA 2003). Except possibly for our problematic recent precedent, see Stanton; Tillery, the FCHR has no basis in a case like the present one to keep the question not only from the jury, but from the judge, as well.
Where public employees file timely, col-orable claims that they were fired in violation of the Whistle-blower’s Act, FCHR’s function is to investigate these claims, take action on behalf of affected public employees where appropriate, “conciliate” cases where possible, and then terminate the investigation, after preparing reports containing findings of fact. Thereafter, whether the FCHR decides there is reasonable cause to suspect a violation or not, the public employee has the right under the statute to seek an adjudication of her claim, either at PERC or in circuit court, at her election. FCHR’s summary truncation of the process, and today’s decision upholding FCHR’s still essentially unex *1072 plained action, have deprived Clare Caldwell of her right to proceed under the statute.
Even when authorized by statute or rule, dismissal is an extreme sanction “appropriate ... only in the most exceptional cases.” See A Professional Nurse, Inc. v. State, Dep’t of Health and Rehabilitative Servs., 519 So.2d 1061, 1064 (Fla. 1st DCA 1988) (deeming prohibition against presenting evidence (because of discovery violation) “as severe as dismissal”). PERC’s denial of Mr. Mathis’s petition had the effect of dismissal because, if permitted to stand, the order would end the case, without any consideration of the merits of the claim.
Mathis v. Florida Dep’t of Corr., 726 So.2d 389, 393 (Fla. 1st DCA 1999). No rule or statute authorizes FCHR’s dismissal in the present case. At this point in the proceedings, we should “remand and reverse this matter to the Florida Human Relations Commission (Commission) to make ... factual and legal determinations” and issue a notice of termination of investigation. Mena v. Lifemark Hospitals of Florida, Inc., 50 So.3d 759, 760-61 (Fla. 1st DCA 2010) (reversing FCHR investigatory determination where it was “not clear how the Commission reached this result”).
We should at the very least certify a question of great public importance along the following lines:
WHETHER THE FLORIDA COMMISSION ON HUMAN RIGHTS IS AUTHORIZED TO DISMISS SUMMARILY A TIMELY WHISTLEBLOWER’S COMPLAINT FILED BY A PUBLIC EMPLOYEE WHERE IT DEEMS THE COMPLAINT “CONCLUSORY” OR LACKING IN SUFFICIENT DETAIL OR SPECIFICITY, ALTHOUGH THE WHISTLEBLOWER’S COMPLAINT ALLEGES THAT A STATE AGENCY DISMISSED HER AS THE DIRECT RESULT OF HER HAVING DISCLOSED A STATE AGENCY’S GROSS MISFEASANCE AND MALFEASANCE TO FEDERAL INVESTIGATORS?

. The Commission's investigatory jurisdiction is broader than the range of claims for which a court or PERC may order relief for a complainant. The FCHR has jurisdiction to “[c]onduct an investigation, [even] in the absence of an allegation, to determine whether reasonable grounds exist to believe that a prohibited action or a pattern of prohibited action has occurred, is occurring, or is to be taken.” § 112.31895(3)(a)(10), Fla. Stat. (2011).

. Describing herself as “Plaintiff,” she alleged:
Plaintiff was originally hired by Defendant on March 17, 2003 and held the position of South Regional Ombudsman at the time of her termination. In early February, 2011, the State Ombudsman, Brian Lee, was terminated/forced to resign by the Defendant for which Mr. Lee has an ongoing lawsuit against the Defendant. Plaintiff was a supporter of Mr. Lee’s and feels that her working relationship with him, was not looked upon favorably by the Defendant. In February, 2011 the Defendant appointed Aubrey Posey, the Programs Legal Advocate, to interim State Ombudsman. A Federal Investigation was initiated by the Federal Administration on Aging. In late March or early April, 2011, Plaintiff sent an email to her staff with a copy to her Supervisor, preparing them for this Federal Investigation. Plaintiff’s supervisor immediately contacted Plaintiff about this email and Plaintiff retracted it. On approximately April 15, 2011, Plaintiff contact [sic] by telephone the Federal Investigator to alert him to the condition of the Ombudsman program and the gross misfeasance and malfeasance that were occurring within. During a May 6, 2011 State Council meeting, Plaintiff spoke up about the needed independence of the Ombudsman Program for the benefit to the people it served. Around the end of August, 2011, the Federal Report from the Administration on Aging was issued to the Defendant which was critical of the Defendant. On September 2, 2011, Plaintiff received a hand delivered termination letter with an immediate effective date of termination of September 2, 2011, and no reason given for her termination. Plaintiff’s termination is a direct result of her prior Whistle Blower reporting. Plaintiff demands the full relief to which she is entitled under the laws applicable to this action.

. The body of the letter reads in its entirety:
The Florida Commission on Human Relations (Commission) has reviewed your charge form, alleging the Florida Department of Elder Affairs retaliated against you in violation of the Florida Public Whistleblower’s Act (Act), §§ 112.3187-112.31895, Florida Statutes (2011). A Commission representative also contacted you by telephone and obtained clarification of your allegations. Having taken all the information you provided into account, the Commission has determined your allegations failed to state a *1067 claim upon which relief may be granted under the Whistle-blower’s Act. Specifically, you did not engage in a protected activity as defined by the Act.
Accordingly, the Commission lacks jurisdiction to investigate this claim. §§ 112.3187-112.31895, Florida Statutes (2011).

. The Robinson Court said “[ojnce a complainant receives a notice of termination of investigation, he or she may elect either to file a complaint with PERC within sixty days or to file a civil action within 180 days. §§ 112.3187, 112.31895(4)(a). If FCHR issues a final order, rather than a notice of termination of investigation, the final order is subject to judicial review under section 120.68, Florida Statutes, as provided in section 112.31895(4)(b).” Robinson v. Dep’t of Health, 89 So.3d 1079, 1081 (Fla. 1st DCA 2012), review denied, No. SC12-1447, 2012 WL 6757547 (Fla. Dec. 28, 2012).
Although FCHR can be said to have investigated (by making a single phone call to Ms. Caldwell), it never gave notice of termination of investigation, dismissing the complaint instead. Ms. Caldwell was obliged to appeal under Robinson and, by the time her appeal concludes, the 60- and 180-day time periods will have run. Only if the court reversed with directions that FCHR investigate and/or, having investigated, give notice of termination of investigation would the clock be restarted. It is too late to start over. An affected public employee "may file a complaint alleging a prohibited personnel action ... [with FCHR] no later than 60 days after the prohibited personnel action.” § 112.31895(l)(a), Fla. Stat. (2011).

. Our approach in Tillery v. Florida Dep't of Juvenile Justice, 104 So.3d 1253 (Fla. 1st DCA 2013) differs from federal employment law which contains analogous requirements for filing charges with the federal Equal Employment Opportunity Commission (EEOC). For example, because the EEOC has primary responsibility for enforcement of the Age Discrimination in Employment Act (ADEA), the ADEA requires that prospective plaintiff employees notify the EEOC before proceeding to litigation on their own. "The purpose of the notice requirement is to provide the EEOC with sufficient information so that it may notify prospective defendants and to provide the EEOC with an opportunity to eliminate the alleged unlawful practice through informal methods of conciliation, conference, and persuasion.” Kristine C. Karnezis, Annotation, Sufficiency of Contents of Notice to Equal Employment Opportunity Commission Charging Violation of Age Discrimination in Employment Act, 27 A.L.R. Fed. 2d 367 (2008).
A complainant alleging discrimination in violation of Title VII is required to file a "charge of discrimination” with the EEOC which triggers the investigatory and conciliatory procedures of the EEOC. See Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir.1998). The purpose of the notice requirement is to "initiate an investigation into the allegations and allow the EEOC to attempt informal means of resolving the dispute.” Karnezis, supra. The Supreme Court has held that what constitutes such a charge must be liberally construed "to protect the employee’s rights and statutory remedies.” Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 406, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). The Court laid down this commonsense functional standard for determining whether a filing qualifies as a "charge”:
In addition to the information required by the regulations, i.e., an allegation and the name of the charged parly, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee’s rights or otherwise settle a dispute between the employer and the employee.
Id. at 402. The Court explained that "the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes[J” Id. The Court subsequently held that complainant's "Intake Questionnaire,” together with an affidavit, constituted a "charge of discrimination” sufficient to trigger EEOC's investigative jurisdiction. Complainant’s failure to fill out and submit "Form 5,” labeled "Charge of Discrimination” was not fatal to her case. Id. at 405. In the present case, of course, Ms. Caldwell did fill out and submit a form charging discrimination.
In Butler v. Cleburne County Comm'n, No. 1:10-cv-25 61-PWG, 2012 WL 2357740 (N.D.Ala. Jan. 17, 2012), approved, 2012 WL 2357741 (N.D.Ala. June 14, 2012), the court held that even where the Plaintiff did not file EEOC’s official Form 5, "Charge of Discrimination,” her letter to the EEOC sufficed as a charge. This letter stated in relevant part, "I wish to file a charge of discrimination against my former employers, the Cleburne County Water Authority and the Cleburne County Commission,” and was accompanied by a letter from her counsel. Id. at *9. The court held
The documents Plaintiff faxed to the EEOC in December 2008 unambiguously requested the agency to act on them as a charge of discrimination, and her later charge filed *1069 on January 28, 2008 does not alter that fact. The ADEA claims are not due to be dismissed on the ground that Plaintiff failed to file a timely EEOC charge.
Id. at *12. In the present case, Ms. Caldwell filed a form entitled WHISTLE-BLOWER RETALIATION CHARGE OF DISCRIMINATION and thereby "request[ed] to be afforded full relief to which I am entitled.”
In Holender v. Mut. Indus. N. Inc., 527 F.3d 352, 353 (3d Cir.2008), complainant filed a "charge” form but failed to check the box on the form next to the statement "I want this charge filed with both the EEOC and the State or local Agency, if any.” Nor was the form notarized. The Third Circuit held this to be sufficient. Id. Nor was the Third Circuit troubled by the fact that complainant refused to respond to EEOC’s requests for further information after the submission of his charge form. Id. at 354; 357. Similarly, in Crevier-Gerukos v. Eisai, Inc., CIV.A. H-11-0434, 2012 WL 681723 (S.D.Tex. Feb. 29, 2012), the court held that when complainant checked the box on an “intake questionnaire” that stated "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above,” an objective observer would interpret this as a request to file a charge, which therefore qualified as a "charge.” The court noted that the intake questionnaire was unverified and unsigned. Id. at *7-9. See also Williams v. CSX Transp. Co., Inc., 643 F.3d 502, 509 (6th Cir.2011) (holding that complainant’s initial charge could be amended); Fava-Crockett v. Boehringer Ingelheim Pharm., Inc., 08CV0196, 2008 WL 1925099, at *1-3 (W.D.Pa. Apr. 29, 2008).

. Under the federal Whistleblower Protection Act (WPA), 5 U.S.C. § 1214(a)(3), which differs from Florida’s law in important respects but which also has administrative exhaustion requirements that must be met before a public employee is entitled to an adjudication, a public employee need only allege reprisal as the result of disclosures within the purview of the WPA:
At the jurisdictional threshold, however, the employee’s burden is significantly lower: for individual right of action appeals “the Board's jurisdiction is established by non-frivolous allegations that the [employee] made a protected disclosure that was a contributing factor to the personnel action taken or proposed.” Stoyanov v. Dep’t of the Navy, 474 F.3d 1377, 1382 (Fed.Cir.2007) (citing Garcia v. Dep’t of Homeland Sec., 437 F.3d 1322, 1325 (Fed.Cir.2006) (en banc)). Thus, Johnston could establish a jurisdictional predicate for her claims by making non-frivolous allegations that: (1) her disclosures were within the purview of the WPA, and (2) she suffered reprisal in the wake of these disclosures.
Johnston v. Merit Sys. Prat. Bd., 518 F.3d 905, 909 (Fed.Cir.2008). See generally Dep’t of Prof'l Regulation, Div. of Real Estate v. Toledo Realty, Inc., 549 So.2d 715, 717 (Fla. 1st DCA 1989) (holding that a state statute modeled after a federal statute "will take the same construction in the Florida courts as its prototype has been given in the federal courts, insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject”).

. Even in an adjudicatory context, Ms. Caldwell's complaint would suffice to invoke a tribunal’s jurisdiction. See Johnston, 518 F.3d at 909 ("There is a fundamental distinction between the requirements necessary to prevail on the merits of a WPA claim and those sufficient to establish board jurisdiction.”). Failure to state a claim does not divest a court (or an adjudicatory agency like PERC) of jurisdiction. See, e.g., Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa., 285 F.Supp.2d 573, 578 (M.D.Pa.2003) ("The fundamental misapprehension of defendant’s argument is a failure to appreciate that, while subject matter jurisdiction is a prerequisite to finding a valid cause of action, a valid cause of action is not a prerequisite to finding subject matter jurisdiction.”). See also Lerner v. Fleet Bank, N.A., 318 F.3d 113, 116-17 (2d Cir.2003) (a lack of RICO standing does not divest the district court of jurisdiction over the action, because RICO standing, unlike other standing doctrines, is sufficiently intertwined with the merits); Asco-Falcon II Shipping Co. v. United States, 32 Fed.Cl. 595, 605 (Fed.Cl.1994) ("The fact that the complaint was dismissed for failure to state a claim, therefore, does not divest the court of jurisdiction over the counterclaim at bar.”); Am. Nat’l Bank & Trust Co. of Chicago v. United States, 23 Cl.Ct. 542, 544 n. 2 (Cl.Ct.1991) ("Dismissal of plaintiff's complaint pursuant to RUSCC 12(b)(4) for failure to state a claim upon which relief can be granted does not divest the court of jurisdiction to hear defendant's counterclaim.”); Mayer v. Mayer, 11-CV-6385 (ENV)(SMG), 2012 WL 441182, at *2 (E.D.N.Y. Feb. 10, 2012) (same); Rhodes v. U.S. I.R.S., 106 A.F.T.R.2d 2010-7438 (D.Ariz.2010) (holding that a pleading or factual deficiency “would at most be grounds to dismiss the case for failure to state a claim, and would not divest the Court of jurisdiction to decide the merits”); Freeman v. State, Dep’t of Corr., 115 Idaho 78, 764 P.2d 445, 446 (Idaho Ct.App.1988) ("[A]n error in pleading does not divest the court of jurisdiction to examine the merits of the underlying claim.”).

. She expanded on the argument she raised in her initial brief by arguing in her reply brief as follows:
But more importantly, Appellee ignores Rule 60Y-11.005, entitled "Relationship of Other Rules.” This rule, in its entirety, states:
“Other rules adopted by the Commission, namely Chapters 60Y-3, 60Y-4 and 60Y-5, F.A.C., shall be the rules governing a proceeding under this chapter to the ex *1071 tent that such other rules do not contradict a specific provision herein.”
This rule was promulgated under §§ 112.3187-.31895, Florida Statutes which means that Rule 60Y-5 was adopted as a rule for charges processed by FCHR under the Public Whistle-blower’s Act. Adherence to this Rule is mandated by Rule 60Y-11.005. Rule 60Y-5.001, Florida Administrative Code, states:
"7) Amendments.
(a) A complaint may be reasonably and fairly amended within 60 days after filing and, thereafter, for good cause with the consent of the Executive Director.
(b) A complaint may be amended to cure technical defects, or omissions, including verification, or to clarify and amplify allegations made therein. Such amendments and amendments which describe an additional unlawful employment practice related to or growing out of the subject matter of the original complaint will relate back to the date the complaint was first received.
(c) An amendment adding or changing a respondent will relate back to the date the complaint was first received if, within the period provided by subsection (2), the new respondent (i) has received such notice of the filing of the complaint as is sufficient to avoid prejudice in a defense on the merits, and (ii) knew or should have known that, but for a mistake concerning identity of the proper respondent, the complaint would have been filed against the new respondent.”
Appellant filed her charge with FCHR on October 19, 2011. Fewer than 60 days later, on December 2, 2011, FCHR dismissed Appellant's charge without even giving her the full time allotted to amend her charge. Thus, Appellant was denied her right to amend under Rule 60Y-5.001 when FCHR dismissed her charge 44 days after it was filed.
Appellee misunderstands Appellant’s argument. She is not challenging the validity of FCHR’s rules as Appellee argues. [See Answer Brief, pg. 12]. Instead, she is challenging FCHR’s authority under its rules to dismiss a valid charge without investigation or allowing her the opportunity to amend to correct any deficiency.
The problem is that FCHR, an administrative agency, is simply rejecting valid whistle blower charges, without giving the opportunity to amend, and instructing whistle blowers to just appeal its decisions to this Court. There is no opportunity to amend like under the Florida Rules of Civil Procedure in which litigants get multiple opportunities to correct deficient pleadings before they are knocked out of court. There is no record created by FCHR to even determine what could have been alleged if the claimant had been given the opportunity to amend.
Reply Brief, 3-5 (citations omitted).